In the Matter of C.M. TURTUR IN-VESTMENTS, INC., d/b/a Chris Turtur Nissan, Debtor.

BELLFORT NATIONAL BANK, Appellant,

v.

C.M. TURTUR INVESTMENTS, INC., etc., et al., Appellees.

No. 88–6018.

United States Court of Appeals, Fifth Circuit.

Sept. 14, 1989.

Allan R. Lazor, Weiner, Strother & Blustein, Aaron Keiter, Neely & Keiter, P.C., Houston, Tex., for appellant.

Peter R. Roest, D. Jansing Baker, Suzanne M. Barnett, Zack A. Clement, Houston, Tex., for Nissan Motors Acceptance Corp.

George R. Neely, Brockstein & Slobin, Houston, Tex., for appellee.

Before GOLDBERG, JOHNSON and DUHE, Circuit Judges.

DUHE, Circuit Judge:

C.M. Turtur Investments, Inc., d/b/a Chris Turtur Nissan, Chapter 11 debtor-in-possession, and Nissan Motor Acceptance Corporation (NMAC) brought a successful adversary proceeding against Turtur's creditor, Bellfort National Bank, for turnover of property of the estate. The property in dispute consists of sight drafts in which both NMAC and Bellfort claim a security interest. The bankruptcy court ordered Bellfort to turn over the property; the district court affirmed. 95 B.R. 459. Bellfort asks this Court to reverse and render judgment that it is a secured creditor of Turtur, ahead of NMAC, and to remand to the bankruptcy court to determine adequate protection. For the following reasons, we affirm.

FACTS:

Turtur, retail dealer of Nissan autos, deposited sight drafts with Bellfort as a mechanism to collect the price from and to transfer title to customers. The drafts were printed on envelopes in which were enclosed the certificates of title and MSO's (manufacturer's statement of original transfer of a new vehicle to the original purchaser or dealer). The drafts stated that a certain amount of money should be deposited to the account of Turtur and collected from the buyer's bank. The bank extended a provisional credit to Turtur and allowed Turtur to draw funds on the basis of the drafts before they were paid.

Turtur filed Chapter 11 bankruptcy while Bellfort was holding drafts containing MSO's and certificates of title for some vehicles in Turtur's inventory and some already sold by Turtur. The bank could not charge back the provisional credit to Turtur's account or obtain funds from Turtur because of the automatic stay in bankruptcy.

Bellfort claimed a statutory lien through possession of the documents. NMAC holds security interests in Turtur's vehicles in inventory, the related MSO's, and certificates of title, by virtue of a wholesale financing agreement and a UCC–1 filed with the Secretary of State. If Bellfort perfected a possessory lien, it would prime NMAC. Tex.Bus. & C.Code § 4.208(c)(3). Bellfort alternatively claims priority status as a holder-in-due-course.

On the stipulated facts, the bankruptcy court denied Bellfort secured status, holding that in order to perfect a lien, the owner of the documents (Turtur) must have given them to the bank with the intent to provide security. While we disagree with that rationale,[1] we affirm the refusal to recognize the bank's claimed security interest.

ANALYSIS:

The bank relies on the following Uniform Commercial Code provision for its security interest:

§ 4.208(a)(1).

---

1. We find no "intent" requirement in

A bank has a security interest in *an item* and any *accompanying documents* or the proceeds of either in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied....

Tex.Bus. & C.Code § 4.208(a)(1) (emphasis added). The bank contends that because Turtur did not pay back the amount of the provisional credits, the bank is secured under § 4.208(a)(1) by not only each draft, but also the accompanying title documents and the proceeds from the sale of the vehicles.

There is no dispute that the sight drafts are "items." *See* § 4.104(a)(7). The question is whether the MSO's and certificates of title are "accompanying documents." One commentator suggests they are not: "The security interest of a bank is limited to the items which are dishonored and does not extend to title certificates representing the automobile purchases with the items." 7 R. Anderson, On the Uniform Commercial Code § 4–208:3 (p. 47) (3rd Ed.1985) (citing *Fidelity and Deposit Co. v. Bank of Bladenboro*, 472 F.Supp. 885 (E.D.N.C. 1978), *aff'd* 596 F.2d 632 (4th Cir.1979)). We agree.

Chapter 4 (in which is found § 4.208, creating the security interest in items and accompanying documents) does not define "accompanying documents." The bank relies on the definition of "document" in § 9.105(a)(6) as a "document of title" as generally defined in Chapter 1. A corollary question is therefore whether Chapter 9's definition (referring to document of title) applies to § 4.208's "accompanying documents."

The preface to the definitional section in § 9.105 begins, *"In this Chapter unless the context otherwise requires:* ... (6) 'Document' means document of title as defined in the general definitions of Chapter 1 (Section 1.201)...." Section 4.208 is in Chapter 4, not Chapter 9. We must therefore examine the context of the word "document" to determine whether Chapter 9's definition applies.

Section 4.208 provides for security in "documents" accompanying instruments for the payment of money, whether nego-

tiable or not. (*See* § 4.104(a)(7), definition of "item".) We believe this context requires that the definition of "documents of title" apply.

Chapter 1 provides:

"Document of title" includes bill of lading and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers. To be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession.

Texas Bus. & C.Code § 1.201(15).

The meaning of "documents of title" is narrowed and clarified by the second sentence of § 1.201(15), requiring bailee status. *Jones v. One Fifty Foot Gulf Star Motor Sailing Yacht, Hull No. 01*, 625 F.2d 44, 49 (5th Cir.1980). "A holder of a document of title, as contemplated by the [UCC], *has title to the document and title to the goods it covers by virtue of possession of the document." Jones*, 625 F.2d at 49 (emphasis in original) (considering the Florida UCC's definition of "document of title"). Because they do not import bailee status, an MSO and a certificate of title are not such "documents of title" as that term is used in the Uniform Commercial Code, notwithstanding dicta in *First Nat'l. Bank of Sikeston v. Jefferson Sales & Distributors*, 460 F.2d 1059 (5th Cir.1972), to the contrary.

■ The requirement of bailee status was not met in this case. The statutory lien on the drafts does not cover the enclosed MSO's and certificates of title, because they are not "accompanying documents" within the meaning of the code. We therefore affirm the ruling that Bellfort is not secured by the MSO's and certificates of title under § 4.208. Consequently, there can be no security in the "proceeds" of the certificates of title.

■ The bank alternatively argues that it is a holder in due course of these certificates of title and MSO's because it took the

instruments for value in good faith without notice of dishonor or other defenses against it (§ 3.302), or because it is a holder in due course of the drafts including the enclosed documents. Bellfort cannot be a holder in due course, however, of the drafts, certificates or MSO's because it is not a "holder". *See* § 3.302(a). A holder is one who is "in possession of a document of title or an instrument or an investment security drawn, issued, or endorsed to him or to his order or to bearer or in blank." Section 1.201(20). The drafts, title certificates and MSO's involved here were already drawn to the order of and signed over to the ultimate purchasers.

Accordingly the judgment appealed from is

AFFIRMED.