In re John T. SAUNDERS, Debtor.

Bankruptcy No. 89–50883–C–11.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Feb. 14, 1990.

William B. Kingman, Foster, Lewis, Langley, Gardner & Banack, Inc., San Antonio, Tex., for debtor.

Patrick H. Autry, San Antonio, Tex., for Bexar Sav.

## ORDER DENYING AS MOOT MOTION FOR VALUATION PURSUANT TO SECTION 506(a)

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the motion of Debtor, for valuation of property pursuant to Section 506(a). Upon consideration thereof, the court finds and concludes that the motion must be denied as moot.

## BACKGROUND FACTS

John T. Saunders is a real estate developer with a long-established reputation in the San Antonio area. Like so many others in his business, the reverses in the real estate market forced Mr. Saunders to seek bankruptcy protection.

Mr. Saunders developed Braun Station some years ago, and borrowed some money from Bexar Savings to further the development of the lots there. The total indebtedness is estimated at about $3,100,000. During the bankruptcy, Saunders and Bexar Savings entered into an agreed order regarding use of cash collateral which permitted Saunders to continue selling lots at a pre-determined release price, provided Mr. Saunders obtained certain approvals from Bexar Savings, and further provided he adhered to a sales schedule. A default would result in automatic relief from the stay, without further court order.

In November 1989, Bexar notified Saunders that a default had taken place. Some negotiation was attempted but ultimately broke down and Bexar Savings posted the property for a January foreclosure.[1] Saun-

---

1. In Texas, a deed of trust mortgage can be foreclosed nonjudicially, after twenty-one days' notice (and after appropriate acceleration, if the note is an installment obligation). Tex.Prop. Code, § 51.002 (West pamphl. ed. 1990). The "bid price" at foreclosure, if less than the indebt-

ders' efforts to enjoin the foreclosure were unsuccessful. In December, Saunders moved to have the property valued by this court, pursuant to Section 506(a). Saunders feared that, were Bexar Savings allowed to control the "valuation" via the foreclosure process, it would award itself an unreasonably large deficiency claim while acquiring the property at a windfall price.[2]

The motion was set for hearing on January 2, 1990, the same day as the scheduled foreclosure.[3] Bexar Savings, responding to the motion, maintained that the motion for valuation was moot once the stay had lifted. Bexar Savings relies on the language of Section 506(a) and on footnote 19 of the Fifth Circuit's recent decision in *In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346 (5th Cir.1989). The debtor maintains that as long as the property still belongs to the estate, the bankruptcy court can determine value under § 506(a), even though the property is slated for foreclosure. He adds that a court-sanctioned valuation furthers the overall bankruptcy purpose of adjusting the relative claims of creditors against estate assets by preventing the secured lender from unilaterally setting its own deficiency claim to the detriment of other unsecured creditors. At the request of the court, Bexar Savings confirmed that the foreclosure in fact was consummated shortly after 10:00 a.m., well prior to the conclusion of the valuation hearing.

Despite the appeal of the debtor's arguments, this court is compelled to agree with Bexar Savings that a valuation hearing un-

der Section 506(a) is now moot in this case. The sole purpose for such a hearing would have been to determine the unsecured claim of Bexar Savings, by extrapolation from the value of the property determined by the hearing. The foreclosure itself has foreshortened that process, however. Under Texas law, the amount owed to a creditor as a deficiency indebtedness is conclusively established by reference to the foreclosure sale price (absent some irregularity in the sale contributing to a grossly inadequate price), even if that price is established by how much the lender itself successfully bid for the property.[4] *See Sheppard v. Citizens Nat. Bank*, 567 S.W.2d 613, 615 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.). Were the foreclosure to have occurred prior to the bankruptcy filing, the amount of the allowed unsecured claim would undoubtedly be established by the foreclosure price. *Savers Federal Sav. & Loan v. Reetz*, 888 F.2d 1497 (5th Cir.1989); *see also American Sav. & Loan Ass'n. v. Musick*, 531 S.W.2d 581, 587 (Tex.1976); *Carruth Mortgage Corp. v. Ford*, 630 S.W.2d 897, 899 (Tex.App.—Houston 1982, no writ); 11 U.S.C. § 502(b). There is no sound policy reason why the result should be any different merely because foreclosure follows rather than precedes bankruptcy.

In addition, Section 506(a) only permits valuation of the *estate's* interest in property. Upon foreclosure, the estate ceases to have any interest in the property.[5] A Section 506(a) valuation is therefore rendered moot by foreclosure.

---

edness, will generally "set" the deficiency owed the lender, absent an irregularity in the foreclosure. *Edmundson Inv. Co. v. Florida Treco, Inc.*, 633 S.W.2d 599, 602 (Tex.App.—Houston 1982), *writ ref'd. n.r.e. per curiam*, 640 S.W.2d 859 (Tex.1982).

**2.** Its fears were underscored by the fact that Bexar Savings is now under the conservatorship of the Resolution Trust Corporation.

**3.** The state statute authorizes nonjudicial foreclosures to be conducted only on the first Tuesday of a given month, between 10:00 a.m. and 4:00 p.m. Tex.Prop.Code, § 51.002 (West pamphl. ed. 1990).

**4.** As one might expect, rarely is there truly competitive bidding at a nonjudicial foreclosure

sale. Typically, the lender is the only bidder. Other persons potentially interested in the property will often negotiate with the lender for the purchase of the property only after the fact, and frequently on financing terms offered by the lender. This is so at least in part because foreclosure sales are expected to be consummated for cash on the date of sale. Lenders are chary about "financing" a foreclosure purchase lest they be accused of collusion, and are equally unwilling to accept less than cash from a third party, lest the third party default after the fact, leaving the lender to absorb the loss.

**5.** In Texas, there is no equity of redemption as there is in many other states.

By the same token, however, the court can find little reason not to permit a debtor to employ the valuation tools of Section 506 for so long as the property is still property of the estate, i.e., for so long as the foreclosure has yet to be consummated. Section 506(a), at base, does no more than offer the estate a mechanism for determining the allowed amounts of a claim holder's secured and unsecured claims against the estate *within the context of the bankruptcy*. Absent foreclosure, the estate still has an interest in the property, and a correlative right to establish the respective secured and unsecured claims of the creditor holding a lien on that property. 11 U.S.C. § 506(a).[6] That the property *subsequently* goes back to the lender, either because of an abandonment, or because the stay is lifted (whether by motion or by default on an agreement), does not affect the validity of that valuation determination for purposes of fixing the claims of that creditor against the estate's assets.[7]

**6.** Subsection (a) of this section [11 U.S.C. § 506(a)] separates an undersecured creditor's claim into two parts—he has a secured claim to the extent of the value of his collateral; he has an unsecured claim for the balance of his claim.... This provision abolishes the use of the terms "secured creditor" and "unsecured creditor" and substitutes in their places the terms "secured claim" and "unsecured claim."

H.R.Rep. No. 595, 95th Cong, 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312.

**7.** Bexar Savings argued that, once the stay is lifted, a valuation hearing should be moot even though the foreclosure sale might be a month or two away. According to Bexar, the relief from stay indicates that there is no "proposed disposition or use" of the property in the bankruptcy case, so there can be no legitimate reorganization purpose to justify the bankruptcy court's valuing the collateral. The argument reads the language of Section 506(a) too narrowly. The statute itself says, in pertinent part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. *Such value* shall be determined in light of the purpose of

The Fifth Circuit's recent decision in *Sandy Ridge* supports this analysis. *In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1354 (5th Cir.1989). Said the court:

[W]e must reject LNB's argument that the bankruptcy court cannot set the value of the property but instead must in all instances require the debtor to abandon that property and let the foreclosure sale market determine its price. This is simply not required by the Code.... It seems contemplated that [the Section 506(a)] determination is to be made by the court. Furthermore, we have recently held that "[t]he valuation of the assets of a debtor in bankruptcy ... is an integral part of the confirmation process under Chapter 11." *Texas Extrusion [v. Lockheed Corp.]*, 844 F.2d [1142] at 1165 [5th Cir.1988]. LNB contends that the abandonment/foreclosure route is necessary to protect its interests in the face of a declining real estate market ... while LNB has valid concerns concerning such market conditions, it is clear that these

the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. 11 U.S.C. § 506(a) (emphasis added). There are many possible "purpose[s] of the valuation" in a bankruptcy case beyond valuation for plan confirmation. In fact, Section 506 (like the rest of Chapter 5 of Title 11), applies to chapter 7 liquidation cases as well as chapter 11 reorganization cases. 11 U.S.C. § 103(a).

One legitimate purpose for valuation might well be to forestall a self-serving unilateral deficiency claim set by the lender. Although a foreclosure sale is one legitimate method for valuing secured and unsecured claims, it is neither the only method, nor necessarily the preferred method. The process of "settling" a creditor's deficiency via a judicial proceeding in lieu of another method more attuned to the needs of the lender may well serve the egalitarian goals of the bankruptcy, albeit at the expense of the exclusive interests of the lender. The estate may have as great a need to determine the unsecured deficiency claim on the eve of foreclosure as on the eve of confirmation. Indeed, the chapter 11 debtor-in-possession may well want to lock in the deficiency claim of a given creditor as a step toward reorganization, even though the property being valued is slated for imminent surrender (voluntary or otherwise) to the lender. For so long as the estate retains an interest in the property, that power should not be abbreviated.

market factors must be taken into account by the bankruptcy court when valuing collateral. 3 *Collier on Bankruptcy* at 506–25. Although we recognize that property valuation is not an exact science, it remains an integral part of the bankruptcy process. *Id.* at 1354. The Fifth Circuit clearly does not intend to abridge the power of a bankruptcy court to perform the most basic of tasks set for it by the Bankruptcy Code, namely, to determine the respective allowed secured and unsecured claims of a given creditor holding a lien on property in which the estate has an interest. Even though the *Sandy Ridge* court focused primarily on the allowance of the secured portion of a given claim, Section 506(a) by its terms makes valuation of collateral integral to the determination of allowed *unsecured* claims as well. 11 U.S.C. § 506(a) ("... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim."). The task of settling on the allowed amount of an unsecured claim will often be laid before the debtor-in-possession even though the collateral is about to go back to the lender. This court can find little justification for a rule that would require the estate to submit to the foreclosure process as the exclusive method for setting a creditor's deficiency claim, especially when that method gives to the holder of the claim the nearly exclusive right to set its own claim.[8]

## CONCLUSION

For the foregoing reasons, this court holds that, for so long as the estate has an interest in property of the estate, it is free to avail itself of the valuation tools of the Bankruptcy Code and Rules, including Section 506(a). Even if the property is slated to go back to the lender as a result of a lifting of the automatic stay, valuation may still be appropriate to permit the estate to "fix" the unsecured claim of the creditor.[9] Once the Texas lender has foreclosed, though, the foreclosure itself, and not Section 506(a) will operate to "set" the deficiency.[10]

In this case, the property has been lost to foreclosure. The motion for valuation must therefore be DISMISSED as MOOT.

So ORDERED.

---

**8.** There are few limitations on a secured creditor's taking advantage of this ability to set its own deficiency, especially post-bankruptcy. The lender need not fear having the foreclosure sale undone for failure to satisfy the *Durrett* rule, because *Durrett* applies only to pre-petition foreclosures, which may be vulnerable to avoidance actions under Section 548 of the Code. *Durrett v. Washington Nat. Ins. Co.,* 621 F.2d 201, 203 (5th Cir.1980). Nor need the lender usually fear an action for wrongful foreclosure for failure to bid enough money for the collateral. Under Texas law, a foreclosure will not be set aside for "inadequacy of consideration" unless it is also accompanied by some irregularity in the sale price, such as collusion or improper notice. *Tarrant Sav. Ass'n. v. Lucky Homes,*

*Inc.,* 390 S.W.2d 473 (Tex.1965). The lender is thus largely free to bid as much (or as little) as it pleases at a post-bankruptcy filing foreclosure sale.

**9.** The court declines to hold at this time that the asserted need to fix the unsecured deficiency claim constitutes grounds for denying relief from the automatic stay. I question whether that need would, as a rule, be adequate to satisfy the "necessity for an effective reorganization" prong of Section 362(d)(2).

**10.** The rule may be somewhat different in jurisdictions in which the debtor retains an equity of redemption after foreclosure.