In the Matter of Charles W.
HOCK, Jr., Debtor.

**Bankruptcy No. 92–10642.**

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

March 31, 1994.

Charles C. Stebbins, III, Augusta, GA, for plaintiff/movant.

Jay M. Sawilowsky, Augusta, GA, for defendant/respondent.

## MEMORANDUM AND ORDER ON OBJECTION TO VALUATION

LAMAR W. DAVIS, Jr., Chief Judge.

On January 20, 1994, a confirmation hearing was held on Debtor's Chapter 11 Plan of Reorganization. With the exception of NationsBank of Georgia, NA's objection to the valuation of its collateral in the Plan, all issues regarding confirmation were resolved at the hearing. I confirmed Debtor's Plan subject to the objection of NationsBank, and took the valuation issue under advisement. Based on the evidence presented at the hearing, the briefs submitted by the parties and the record in the file, I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor filed his original Disclosure Statement and Plan of Reorganization ("Plan") on January 29, 1993. Since this date, Debtor has filed three new Disclosure Statements and Plans, the latest on September 16, 1993. Debtor has also filed two Modifications and Amendments to the latest Plan. With the exception of NationsBank of Georgia, NA ("NationsBank"), all classes of creditors casting ballots accepted Debtor's final amended Plan. Debtor moved this Court to confirm his plan over the rejection of NationsBank pursuant to 11 U.S.C. § 1129(b)(1), a so-called "cram-down" confirmation. Having determined that the Plan satisfied all of the requirements set forth in section 1129(b), I granted Debtor's motion and confirmed his Plan, subject only to the resolution of NationsBank's objection to the valuation of its collateral under the Plan.

NationsBank holds an allowed claim against Debtor in the amount of $361,411.69, which is secured by a first mortgage on real property known as the "Ye Olde Grocery Store", located at the Corner of Blue Ridge and Evans-to-Lock Road, Columbia County, Georgia. On August 16, 1993, NationsBank filed an objection to Debtor's valuation of the property in the Disclosure Statement then on file, asserting that the value of the property was less than the amount of its claim. A hearing was conducted on August 26, 1993, to determine the value of NationsBank's collateral, and both Debtor and NationsBank presented expert testimony on the issue. NationsBank's experts placed the property's value at $290,000.00, while Debtor, who was qualified as an expert witness, testified to a value of $420,000.00. At the close of the hearing, I announced that I would enter an Order setting the value of the property at $341,000.00, leaving NationsBank an unsecured deficiency claim in the amount of $20,411.69. The written Order fixing the value at $341,000.00 was entered on October 27, 1993.

As of the date of the valuation hearing, August 26, 1993, Debtor's Plan, as it related to NationsBank, proposed to abandon the property in "full satisfaction" of any claim held by NationsBank. On September 16, 1993, after the announcement of my ruling on value at the August 26 hearing but before a written order was entered, Debtor filed a new Plan and Disclosure Statement which proposed to retain the collateral and pay NationsBank to the extent that it had been determined to be secured (i.e. $341,000.00) at a stated rate of interest and amortization rate. Then, on October 25, 1993, two days before entry of the written order, Debtor filed an amendment and modification to the Plan, which in essence gave Debtor an alternative right to surrender the property in full satisfaction of the "debt and values previously established by the Court as to said property." In other words, Debtor sought the right to abandon the property in satisfaction of the secured claim, leaving only NationsBank's unsecured deficiency claim of $20,411.69 to be paid under the Plan.

In summary, the proposed treatment of NationsBank and its collateral in Debtor's Plan went from abandonment, to retention, and back to abandonment, in the period intervening between the August 26th hearing and the entry of the October 27th Order. The original abandonment, however, was to be in full satisfaction of NationsBank's claim, while the provision ultimately confirmed called for abandonment in satisfaction of NationsBank's secured claim and the payment of a $20,411.69 deficiency claim under the Plan. Debtor has in fact exercised his option of surrendering the property to NationsBank. On December 13, 1993, an Order was entered by this court modifying the automatic stay to permit NationsBank to foreclose its security deed on the property and security interest in certain equipment located upon the property. The Order also provided that the modification of the stay was "without any waiver of or prejudice to any claim or contention of Debtor [or] NationsBank ... as to any deficiency". This provision was included to preserve NationsBank's opportunity to argue at the confirmation hearing that the deficiency amount should not be fixed at $20,411.69.

In accordance with that reservation of rights, NationsBank objected at the January 20th hearing to Debtor's proposal in the Plan to limit the amount of NationsBank's deficiency claim to $20,411.69, contending that it should not be bound by the value set at the August 26th hearing that the price brought at the foreclosure sale would be the best evidence of the value of the property, and that it is inequitable to allow other undersecured creditors under the Plan to foreclose and file a deficiency claim.

Debtor, on the other hand, contends that the use of the $341,000.00 value in his current Plan is entirely consistent with section 506(a) because the purpose of the valuation and proposed disposition of the property is essentially the same now as it was on August 26, 1993. To this end, Debtor asserts that, even if this court were to rule that another valuation hearing was required, given the parties stipulation as to the value of the property, such a hearing would result in a finding of the exact same value of $341,000.00. The

parties stipulated that there have been no changes in the property or the market which would fundamentally alter the value of the property between the August 26, 1993 hearing setting the value at $341,000.00, and the date of the latest hearing, January 20, 1994.

### CONCLUSIONS OF LAW

■ 11 U.S.C. § 506(a) provides for the bifurcation of an undersecured creditor's claim into secured and unsecured components, based upon the value of the property in which the party holds a security interest. Such a creditor is considered, under section 506(a), secured only to the extent of the value of the creditor's collateral, with the remainder of its claim being classified as unsecured. *See generally In re Landing Assoc., Ltd.,* 122 B.R. 288, 291 (Bankr.W.D.Tex.1990). As a result, determination of "value" is a critical matter. Section 506(a) directs that:

> Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). The value of a creditor's collateral is a question of fact for the court, *see In re Bergh,* 141 B.R. 409, 419 (Bankr. D.Minn.1992), and, according to the legislative history of section 506(a):

> "Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), *reprinted in* 5 U.S.Code Cong. & Admin.News 5787, 5963, 6312 (1978). As the District Court for the Southern District of Georgia has recently held:

> That § 506(a) is cast in such generalities is not by accident. The legislative history of § 506(a) unequivocally indicates that subsection (a) is intended to accommodate a flexible approach to valuations rather than a single, fixed method.

*In re James Luther Johnson, Jr., et al. (James Luther Johnson, Jr., et al. v. General Motors Acceptance Corp.),* 165 B.R. 524, 528 (S.D.Ga.1994). *See also In re Briggs Transportation Co.,* 780 F.2d 1339, 1349 (8th Cir. 1985); *In re Reddington/Sunarrow Ltd. Partnership,* 119 B.R. 809, 812 (Bankr. D.N.M.1990); *In re Landing Assoc., Ltd.,* 122 B.R. 288, 292 (Bankr.W.D.Tex.1990).

▮ In the present case, Debtor originally proposed to dispose of NationsBank's collateral by abandoning it to NationsBank in "full satisfaction" of any debt owed. NationsBank objected to this proposal, and at the August 26 hearing, I determined, pursuant to section 506(a), that NationsBank was secured to the extent of the value of property, $341,000.00, and that it held an unsecured claim equal to the amount by which its claim exceeded the value of the property, $20,411.69. NationsBank did not appeal this valuation.

The purpose of the August 26 hearing was to determine the value of NationsBank's collateral in light of Debtor's proposal to abandon it to NationsBank in "full satisfaction" of NationsBank's claim. After that hearing, Debtor twice modified NationsBank's treatment under the Plan. The second modification brought NationsBank's treatment into conformity with the value set at the August 26 hearing because the Plan calls for Debtor to abandon the property in satisfaction of NationsBank's allowed secured claim and pay NationsBank's allowed unsecured deficiency claim, in the amount of $20,411.69, under the Plan.

▮ Because there has been no change in circumstances [1] which would indicate that the value established at the August 26 hearing is no longer valid, the question presented is whether the plan provision is "fair and equitable" so that a "cram-down" confirmation may result based on the previously determined valuation or whether NationsBank may insist on being permitted to recover a larger deficiency after its anticipated foreclosure. The Court of Appeals for the Fifth Circuit, in holding that the abandonment of collateral provides a non-accepting secured creditor with the "indubitable equivalent" of its secured claim, dealt with this precise issue as follows:

> We must reject [the undersecured creditor's] argument that the bankruptcy court cannot set the value of property but instead must in all instances require the debtor to abandon the property and let the foreclosure sale market determine its price. This is simply not required by the Code. Section 506(a) provides that "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." It seems contemplated that this determination is to be made by the court. Furthermore, we have recently held that "[t]he valuation of the assets of a debtor in bankruptcy ... is an integral part of the confirmation process under Chapter 11."

*Matter of Sandy Ridge Development Corp.,* 881 F.2d 1346, 1354 (5th Cir.1989), *reh'g denied,* 889 F.2d 663 (5th Cir.1989) (citation omitted). Accordingly, I hold that where the property value has not fundamentally changed following entry of a final order setting value and where Debtor's proposed use has not changed, a debtor's abandonment of the property to the secured creditor in full satisfaction of its secured claim, as determined by the court under 11 U.S.C. § 506(a), is sufficient to provide that creditor with the "indubitable equivalent" of its secured claim as required under 11 U.S.C. § 1129(b)(2)(A). *Accord In re Leroy Moore, d/b/a Moore Homes,* Ch. 11 Case No. 88–40105, slip op. at 10–11 (Bankr.S.D.Ga. May 31, 1990) (J. Dalis) ("Distribution of estate property, at values properly fixed by the bankruptcy court, to nonconsenting creditors under a liquidating plan satisfies the 'indubitable equivalent' provision of 11 U.S.C. § 1129(b)(2)(A)(iii)."). Once the secured claim is valued, the unsecured deficiency claim is likewise set, in this

---

**1.** For example, destruction of improvements by an uninsured calamity, or a precipitous change in real estate values between the date of the valuation hearing and confirmation would necessitate another evidentiary showing. However, the parties stipulated that there had been no intervening, fundamental change.

case in the amount of $20,411.69. Because Debtor's plan proposes full payment of this amount over time, the plan likewise meets the "fair and equitable" test of 11 U.S.C. Section 1129(b)(2)(B)(i). There being no other ground upon which NationsBank's objection was founded, I conclude that the plan meets the "fair and equitable" test both as to the secured and unsecured components of NationsBank's claim. Accordingly, Nations-Bank's objection to its treatment under the plan is overruled.

### ORDER

Pursuant to the foregoing Findings of Fact and Conclusions, IT IS THE ORDER OF THIS COURT that the Objection to Confirmation of NationsBank is hereby DENIED.