In the Matter of Connie Arlene **PIERCE, Debtor.**

**Connie Arlene PIERCE, Plaintiff,**

v.

**INDUSTRIAL SAVINGS COMPANY, Defendant.**

**Bankruptcy Nos. 79–1199, A80–15.**

United States Bankruptcy Court, D. Nebraska.

July 25, 1980.

Vard Johnson, Omaha, Neb., for debtor-plaintiff.

Dean Suing, Omaha, Neb., for defendant.

### MEMORANDUM OPINION

DAVID L. CRAWFORD, Bankruptcy Judge.

The debtor, Connie Pierce, brought this action to redeem an automobile pursuant to § 722 of the Bankruptcy Code. All necessary facts are stipulated except the value of the auto. The debtor believes the auto, a 1974 Plymouth Duster, to be worth $300, while the defendant believes that it is worth more than the amount still owing, stipulated to be $869.53.

At trial both parties offered evidence. The debtor listed a number of problems with the auto, some of which had existed at the date of filing her bankruptcy petition and some of which had developed since that time. She stated the auto was worth $500 on the date of filing and is presently worth $300.

17. *Cf. Manchester Modes, Inc. v. Lilli Ann Corp.*, 306 F.Supp. 622, 626 (S.D.N.Y.1969).

18. 38 F.R.D. 424 (N.D.N.Y.1965).

19. *Id.* at 425–6.

The debtor's expert witness, who has been in the business of selling automobiles for 30 years and is presently employed by a local Plymouth dealer, stated that he appraised the auto in March, 1980. His appraisal included inspection of the auto while it was operating. He testified that the auto was worth $300 wholesale at the time of his appraisal and could have no retail value without substantial repair, estimated to cost $400 to $600 for the problems he knew about. After such repair, the auto could be worth $1,000 to $1,200 retail. He further testified that there is currently very little change in the market value of 1974 models over a six-month period.

The defendant also called an expert witness who testified to a substantially higher value for the car. However, her testimony was based on a physical inspection of the exterior of the auto while it was parked. As most of the major problems with this auto would not be apparent from such an inspection, I do not accept her appraisal.

I find that the auto was worth $300 on the date of the redemption hearing. However, I also find that the auto may have been worth as much as $500 on the date of filing the bankruptcy petition, which raises the issue of the time at which valuation shall be made for the purpose of redemption.

The Bankruptcy Code is silent on this point, as is the legislative history. Section 722 of the Bankruptcy Code merely states that the debtor must pay the "amount of the allowed secured claim" to the lienholder. Section 506(a) of the Code which provides for the determination of allowed secured claims, states:

"Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

A similar problem existed under § 57(h) of the former Bankruptcy Act. That section provided for the valuation of collateral of a secured creditor for the purpose of deducting the value from the amount of the creditor's claim. Like § 506(a) of the Bankruptcy Code, Section 57(h) provided no guidance as to the date of valuation.

Collier considered the best practice to be to evaluate securities on the date of sale or, where there was no sale, on the date of evaluation. *3 Collier on Bankruptcy*, para. 57.20 at 361 (14th ed. 1977). This rule was to be modified only where the secured creditor's gross negligence or wanton disregard of the rights of other creditors warranted valuation as of some other time *Id.* at 360; See also Annot. 21 ALR Fed. 289 (1974). While results were not uniform, the general trend of the cases was to allow the secured creditor some time to make reasonable business decisions but not to allow the secured creditor to delay unreasonably in realizing on the security to the prejudice of the estate or unsecured creditors. See, e. g., *In re Pennyrich International, Inc.*, 473 F.2d 417 (5th Cir. 1973).

I believe that a similar approach should be adopted in redemption proceedings. The intent of § 722 of the Bankruptcy Code is to place the secured creditor in the same position it would have been in had it been allowed to repossess and sell the goods in the ordinary course of events. See H.R.No. 95–595, 95th Cong., 1st Sess. at 380–81 (1977), U.S.Code Cong. & Admin.News 1978, at 6336–6337.

Given the interval between filing the bankruptcy petition and the date of discharge, valuing the property as of the date of filing the petition would always place the secured creditor in a better position than it would be if it were allowed to repossess in the ordinary course of events.

Ordinarily, the time of valuation will be the date of the redemption proceeding. If the secured creditor can show undue delay, gross negligence or other acts by the debtor which unreasonably diminish the value of the collateral, some other time of valuation will be used. However, there is no evidence of such behavior in this case.

As there is credible evidence showing that there is no retail market for the automobile in this case, I need not determine at

this time whether the redemption price should be wholesale or retail value. Accordingly, I hold that the debtor may redeem the auto by paying the defendant $300.

A separate order is entered in accordance with the foregoing.