**In re REDDINGTON/SUNARROW LTD. PARTNERSHIP, a Texas limited partnership, d/b/a Desert Arrow Apartment Community, Employer ID No. 74–2386639, 86–0518992, Debtor.**

**Bankruptcy No. 11–89–01230 MA.**

United States Bankruptcy Court,
D. New Mexico.

Oct. 11, 1990.

Sidney J. Diamond, El Paso, Tex. Geraldine E. Rivera, Albuquerque, N.M., for debtor.

James S. Starzynski, Albuquerque, N.M., for Clark Financial Corp., Value Management Co., & PMS, Inc.

Charles A. Beckham, Jr., El Paso, Tex., James L. Rasmussen, Albuquerque, N.M., for Resolution Trust Corp.

Walter F. Wood, Tucson, Ariz., for Empire West.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on September 17, 1990, for final hearing on the Resolution Trust Corporation's motion for relief from the automatic stay. Having considered the arguments of counsel, case law, exhibits, and memoranda of law submitted by the parties, and being otherwise fully informed and advised, the Court finds the motion is not well taken and should be denied.

### FACTS

Reddington/Sun Arrow Limited Partnership, a Texas limited partnership ("debtor"), filed for relief under chapter 11 of the Bankruptcy Code on May 1, 1989. The debtor's primary asset is an apartment complex located in El Paso, Texas, known as the Desert Arrow Apartments ("property"). At the time of the filing, Victoria Savings Association ("Victoria") held a first lien on the property and a lien on all rents from the property.

On June 14, 1989, this Court entered an Agreed Order Regarding Interim Use of Cash Collateral and Providing Adequate Protection ("cash collateral order"). The cash collateral order provided that the debtor was authorized to use the rents from the property and Victoria was to be provided a portion of the rents as adequate protection of its security interest therein. Pursuant

to the order, Victoria has received payments of approximately $600,000.

On June 28, 1989, the Federal Home Loan Bank Board ("Bank Board") appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver of Victoria. The Bank Board chartered Victoria Savings Association, F.S.A. ("Federal Association"), and authorized the transfer of substantially all of the assets, deposits and certain other liabilities to the newly chartered Federal Association. The Bank Board appointed FSLIC as conservator of the newly chartered Federal Association. The Resolution Trust Corporation ("RTC") has succeeded to the rights of the FSLIC. The debtor is indebted to RTC in the approximate amount of $5,400,000.

The indebtedness to RTC is secured by a first lien upon the real property and upon all rents, issues, profits, and management and services fees from the property pursuant to a Collateral Assignment of Leases, Rentals and Management Fees as well as the Deed of Trust.

On July 3, 1990, the debtor filed its Second Amended Plan of Reorganization of Debtor-in-Possession ("Plan") and Second Amended Disclosure Statement. The Second Amended Disclosure Statement was approved on August 23, 1990, subject to the requirement that the debtor make certain modifications. In its plan, the debtor proposes to execute a promissory note in favor of the RTC secured by the property in the approximate principal amount of $4,000,000. The parties have stipulated that the property has a fair market value of $4,600,000. The debtor proposes to reduce RTC's secured claim by the amount received by RTC pursuant to the cash collateral order. The debtor admits that if the claim is not reduced, a plan may not be feasible.

RTC has stipulated that there has been no decrease in the value of the collateral.

## DISCUSSION

At issue is approximately $600,000 which the debtor has paid to RTC pursuant to the cash collateral order. The debtor has admitted there is no equity in the property; therefore, RTC's argument on the stay motion focused on the question of whether the property is necessary for an effective reorganization.[1] RTC contends that the property is not necessary for an effective reorganization because its claim cannot be reduced as the debtor proposes, and therefore the debtor cannot reorganize.

RTC argues that the payments made by the debtor should not go to reduce the principal on the debt because the payments were made solely to protect its interest under 11 U.S.C. § 361.[2] The cash collateral order does not furnish any guidance to the Court. The order only states that "the Debtor ... shall pay to Victoria the 'net cash flow' which for the purposes of this Order shall be all rental income and other cash collateral received by the Debtor...."

1. 11 U.S.C. § 362(d)(2) provides:
(d) On request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(2) with respect to a stay of an act against property under subsection (a) of this section, if—
(A) the debtor does not have equity in such property; and
(B) such property is not necessary to an effective reorganization.

2. 11 U.S.C. § 361 provides:
When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

The order further provides that Victoria shall have continuing postpetition liens on all rents from the property. The parties did not specify in the cash collateral order how to treat the payments. Therefore, the Court must look to the Bankruptcy Code and case law to decide if the payments will reduce the principal on the debt owed to RTC.

RTC argues that it is entitled to have the payments made pursuant to the cash collateral order as adequate protection not because the value of the collateral is decreasing but rather because the allowed secured claim is not increasing. RTC's argument centers on a change in amount of the allowed secured claim between the date of filing the petition and the date of plan confirmation. At the date of filing the petition, the value of the collateral was $4.6 million and therefore the allowed secured claim was $4.6 million.[3] The parties agree that the value of the collateral is not depreciating and thus on the date of confirmation the value remains $4.6 million. RTC argues that if the rents had been sequestered, the value of the collateral would have increased and the amount of the allowed secured claim would increase commensurately. RTC therefore contends that its position has eroded over time due to the stay and urges the Court to determine its allowed secured claim as of the date of plan confirmation.

## I. Determination of Allowed Secured Claim

The threshold question before the Court is: What date should be used for the court's determination of the value of an allowed secured claim for purposes of determining adequate protection under § 362? Should it be the date of filing the petition or the date of plan confirmation?

As an undersecured creditor, RTC would benefit from any increase in the value of the collateral in the period between the date of filing and the date of confirmation. "Value," as set out in § 506(a), is an amorphous term. It "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." *In re Caraway,* 95 B.R. 466, 467 (Bankr.W.D.Ky. 1988). In *In re Marion Street Partnership,* 108 B.R. 218 (Bankr.Minn.1989), for purposes of determining adequate protection under § 362, the court valued the collateral as of the date of filing the petition. The court held that under § 361, the creditor was entitled to be compensated for potential declines in the value of the collateral measured from that date.

In the context of automatic stay litigation, other courts have also decided that determination of value as of the date of filing of the petition is appropriate under § 506(a). *In re Barkley–Cupit Enter., Inc.,* 13 B.R. 86 (Bankr.N.D.Ga.1981), *aff'd, Barkley–Cupit Enter. v. Equitable,* 677 F.2d 112 (5th Cir.1982); *In re Smithfield Estates, Inc.,* 48 B.R. 910 (Bankr.R.I.1985); *In re Sun Valley Ranches, Inc.,* 38 B.R. 595 (Bankr.Idaho 1984); *In re Born,* 10 B.R. 43 (Bankr.S.D.Tx.1981).

The Court is aware of the decisions in *In re Seip,* 116 B.R. 709 (Bankr.D.Neb. 1990), and *In the Matter of Kain,* 86 B.R. 506 (Bankr.W.D.Mich.1988). In both of those cases, the courts decided that the value of the collateral for purposes of confirmation of a plan should be determined as of the date of confirmation. Those courts were correct in their analysis that a value determination for plan confirmation purposes is not the same as a value determination for automatic stay purposes or for

---

**3.** 11 U.S.C. § 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

determining the allowed amount of a secured claim.

■ Valuing an allowed secured claim under § 361 as of the date of filing the petition makes the most sense in light of the Supreme Court's decision in *United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("Timbers"). When *Timbers* was before the Fifth Circuit, the court's view was that Congress intended that a secured creditor be adequately protected only for the fixed amount of its allowed secured claim, an amount that is strictly limited to the value of the property securing the debt. *In re Timbers of Inwood Forest Assoc., Ltd.*, 793 F.2d 1380, 1386–87, n. 7 (5th Cir.1986). The court decided that the amount of the allowed secured claim should be determined as of the date of filing the petition. *Id.* at 1387. This Court holds that an allowed secured claim must be determined as of the date of filing of the bankruptcy petition.

The next question to be addressed is whether the payments made pursuant to the cash collateral order can reduce the principal on the debt owed to RTC.

## II. Treatment of Payments Made Pursuant to the Cash Collateral Order

■ Once a creditor is subject to the automatic stay, it can receive adequate protection under § 361. These payments can be interest payments or can reduce the principal on a debt owed, among other things. However, one thing is clear—an undersecured creditor whose collateral is not depreciating cannot recieve interest on its collateral during the stay to assure adequate protection. *Timbers*, 484 U.S. at 382, 108 S.Ct. at 635. It is undisputed that RTC is undersecured. RTC admits that its collateral is not depreciating but contends that its claim is being eroded.

In support of its position, RTC cites *In re Flagler-at-First Assoc., Ltd.*, 114 B.R. 297 (Bankr.S.D.Fla.1990). In *Flagler*, the court accepted the argument of the creditor that its collateral was declining in value. The court held that postpetition payments need not reduce the creditor's allowed secured claim. *Flagler* is distinguishable from the

case at bar on two grounds. First, the court there accepted the argument that the allowed secured claim should be determined as of the date of plan confirmation. This court will determine the allowed secured claim as of the date of filing the petition. Second, the court in *Flagler* had more of an indication of how the parties intended that the payments be treated. Flagler's attorneys expressly agreed to a turnover of excess rents to "preserve the status quo and prevent any erosion of [the creditor's] position on the property." *Id.* at 300. Flagler's attorney further stated that "we'll start giving you excess [rents] now ..., in exchange for that, we want you to consider our serious proposal regarding a restructure of this indebtedness." *Id.* It seems clear that the parties in *Flagler* contemplated that the payments would go to protect the creditor's interest and not to reduce the principal owed on the debt. Whether that was appropriate or not, it is not the situation here.

■ RTC is an undersecured creditor and its collateral is not depreciating yet it alleges that the payments of rent received pursuant to the cash collateral order only provide adequate protection and should not go towards reduction of its allowed secured claim. Whether the allegation is that the payments are adequate protection payments, interest payments, or lost opportunity costs, the Supreme Court in *Timbers* made it clear that an undersecured creditor whose collateral is not depreciating is not entitled to such payments. 484 U.S. 365, 108 S.Ct. 626 (1988). In *Timbers*, the Court was concerned that an undersecured creditor not improve its position with respect to other creditors. *Id.* at 372, 108 S.Ct. at 630–31. If payments are made to an undersecured creditor, they must be allowed to reduce the allowed secured claim of the creditor. Otherwise the payments would be treated as interest payments or use value, in direct contravention of *Timbers* and § 506. *In re Maun*, 95 B.R. 94 (Bankr.S.D.Ill.1989); *In re Kain*, 86 B.R. 506 (Bankr.W.D.Mich.1988).

RTC was secured in the amount of $4.6 million as of the date of filing. If RTC's

allowed secured claim were increased, the money available to pay other secured and unsecured creditors would decrease. An undersecured creditor is entitled to be protected to the extent its collateral is depreciating, but its position is not to be improved in relation to other creditors. *Timbers*, 484 U.S. at 372, 108 S.Ct. at 630–31. "[T]he proportions of the claim that are secured and unsecured would alter, as the stay continues—since the value of the entitlement to use the collateral from the date of bankruptcy would rise with the passage of time. No one suggests this was intended." *Id.*

In a plan of reorganization, all parties must bear some costs. As Justice Scalia stated, "[t]hat secured creditors do not bear one kind of reorganization cost hardly means that they bear none of them.... [U]ndersecured creditors were not entitled to postpetition interest as compensation for the delay of reorganization." *Id.* at 379, 108 S.Ct. at 634. Another court, in discussing creditors' costs of reorganization, noted:

> Normally, outside of bankruptcy, an oversecured creditor will be able to foreclose prior to the erosion of his equity cushion, just as an undersecured creditor is normally able quickly to realize upon his collateral. Each is required to make some sacrifice in Chapter 11, however, in order that all interests may benefit from a successful reorganization.... If reorganization is to be accomplished and the interests of creditors, stockholders and employees are all to be accommodated, some curtailment of the rights of each is clearly necessary. Congress chose to limit the rights of a secured creditor to protection of the value of its security interest.

*In re Lane*, 108 B.R. 6, 9 (Bankr.Mass. 1989). RTC's cost as an undersecured creditor is that it must reduce its secured claim by the amount received pursuant to the cash collateral order.

### III. Effective Reorganization

 With the reduction of RTC's allowed secured claim, next the Court must examine whether an effective reorganiza-

tion is feasible. For the debtor to prevail on a stay motion, the debtor must show that there is a reasonable prospect of a successful organization within a reasonable period of time. *Id.* 484 U.S. at 376, 108 S.Ct. at 632–33. The debtor has the burden of proof on this issue. 11 U.S.C. § 362(g)(2). A second amended disclosure statement has been approved and a confirmation hearing has been set. At the final hearing on the stay motion, the debtor demonstrated that a plan may be confirmed soon. Therefore, the debtor has met its burden of proof.

The motion for relief from the automatic stay will be denied. An appropriate order will enter.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.