**In re Winifred F. WOOD, Debtor.**

**Winifred F. WOOD, Plaintiff,**

v.

**LA BANK and First Federal Savings & Loan of Rochester, Defendants.**

**Bankruptcy No. 5–93–01437.
Adv. No. 5–93–0231.**

United States Bankruptcy Court,
M.D. Pennsylvania.

Jan. 17, 1996.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

The facts of this litigation are not complex. Winifred F. Wood filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code on August 4, 1993. On the date of filing, she was the owner of a residential parcel of real estate situate at 109 East Ann Street, Milford, Pennsylvania, which her appraiser valued at One Hundred Seventy–Six Thousand Dollars ($176,000.00) as of October 4, 1993.

Encumbering that real estate was a first mortgage in favor of First Federal Savings & Loan of Rochester and a second mortgage in favor of LA Bank. First Federal Savings & Loan of Rochester claims an indebtedness of Two Hundred Thirty–Four Thousand Two Hundred Ninety–One and 99/100 Dollars ($234,291.99) as of the date of filing. LA Bank was alleged to be owed Eighty–Seven Thousand Two Hundred Dollars ($87,200.00) as of the date of filing.

Based on these facts, the Debtor filed a Complaint to Determine Secured Status in order to accomplish a stripdown of the First Federal Savings & Loan mortgage to the alleged fair value of the property and, further, to reduce LA Bank's mortgage to unsecured status.

While LA Bank filed a consenting answer, First Federal Savings & Loan disputed the valuations and requested a hearing.

At the time of trial on this matter, the Bank produced an expert who testified that, as of December 17, 1993, the fair market value of this piece of real estate was One Hundred Seventy–Six Thousand One Hundred Dollars ($176,100.00), a figure remarkably similar to that of Debtor's appraiser.

Lest any reader believe that this litigation was generated by a mere One Hundred Dollar ($100.00) discrepancy in valuation, the Bank's appraiser did a second valuation on May 27, 1994, which concluded that the property on that date was worth One Hundred Ninety–Six Thousand Four Hundred Dollars ($196,400.00). This increase in valuation was due solely to the Debtor's efforts during the bankruptcy in upgrading the zoning from

Joseph Murray, Wilkes–Barre, PA, for Debtor/Plaintiff.

Joseph Kluger, Wilkes–Barre, PA, Joan Brodsky, Philadelphia, PA, for First Federal Savings, Defendant.

John O'Brien, Scranton, PA, for LA Bank, Defendant.

residential to "limited commercial". According to the appraiser, this change in zoning meant a real increase in the value of this property.

As one would expect, the Debtor maintains that the increase in valuation is of no account since the relevant date for valuation purposes is the date of filing. First Federal Savings & Loan, on the other hand, alleges that the relevant date for valuing the collateral for the purpose of this "stripdown" complaint is the date of confirmation, which would allow

its secured claim to reflect the actual value of the premises as of the latest valuation.

When researching the applicable date of valuation, I was not quite prepared for the sheer number of diverse opinions on the subject. A multitude of courts are quite firm that the applicable date of valuation of property of the estate is the date of filing the bankruptcy.[1] A significant number of courts embrace the conclusion that the confirmation date is the focus point of valuation.[2] Not to

1. *In re Hall,* 1 F.3d 853 (9th Cir.1993).

*In re Timbers of Inwood Forest Assoc., Ltd.,* 793 F.2d 1380, 1386 n. 7 (5th Cir.1986)
*In re George Ruggiere Chrysler–Plymouth, Inc.,* 727 F.2d 1017 n. 4 (11th Cir.1984)
*In re Johnson,* 165 B.R. 524 (S.D.Ga.1994)
*In re Brinson,* 153 B.R. 952 (Bkrtcy.M.D.Fla. 1993)
*In re Reddington/Sunarrow Ltd., Partnership,* 119 B.R. 809, 813 (Bkrtcy.D.N.Mex.1990)
*In re Beard,* 108 B.R. 322 (Bkrtcy.N.D.Ala.1989)
*In re Marion Street Partnership,* 108 B.R. 218, 224 (Bkrtcy.D.Minn.1989)
*In re Flagler–At–First Assoc., Ltd.,* 101 B.R. 372, 376 (Bkrtcy.S.D.Fla.1989) (real estate)
*In re Flagler–At–First Assoc., Ltd.,* 101 B.R. 372, 377 (Bkrtcy.S.D.Fla.1989)
*In re Mays,* 85 B.R. 955, 958 (Bkrtcy.E.D.Pa. 1988), 1988 WL 81716 (E.D.Pa.1988)
*In re Mays,* 85 B.R. 955, 962 (Bkrtcy.E.D.Pa. 1988) (real estate)
*In re Canaveral Seafoods, Inc.,* 79 B.R. 57, 58 (Bkrtcy.M.D.Fla.1987)
*In re Chandler,* 77 B.R. 513 (Bkrtcy.E.D.Pa.1987)
*Matter of Dente/Pender,* 60 B.R. 164 (Bkrtcy. M.D.Fla.1986)
*Matter of Grube,* 54 B.R. 655, 657 (Bkrtcy.D.N.J. 1985)
*In re Wells,* 52 B.R. 368 (Bkrtcy.E.D.Pa.1985)
*In re Smithfield Estates, Inc.,* 48 B.R. 910 (Bkrtcy.D.R.I.1985)
*In re Datair Systems Corp.,* 42 B.R. 241 (Bkrtcy. N.D.Ill.1984)
*In re Brager,* 39 B.R. 441 (Bkrtcy.E.D.Pa.1984), *aff'd Brager v. Blum,* 49 B.R. 626 (E.D.Pa.1985)
*In re Sun Valley Ranches, Inc.,* 38 B.R. 595 (Bkrtcy.D.Idaho 1984)
*In re Aegean Fare Inc.,* 34 B.R. 965, 968 (Bkrtcy. D.Mass.1983)
*In re Kalli,* 34 B.R. 191, 193 (Bkrtcy.D.Vt.1983)
*Fox v. Peck Iron and Metal Co., Inc.,* 25 B.R. 674, 693 (Bkrtcy.S.D.Cal.1982)
*Matter of Kennedy Mortgage Co.,* 23 B.R. 466 (Bkrtcy.D.N.J.1982)
*In re Rappaport,* 19 B.R. 971 (Bkrtcy.E.D.Pa. 1982)
*LaJolla Mortg. Fund v. Rancho El Cajon Assoc.,* 18 B.R. 283 (Bkrtcy.S.D.Cal.1982)
*In re Kinser,* 17 B.R. 468 (Bkrtcy.N.D.Ga.1981)
*In re Tanner,* 14 B.R. 933 (Bkrtcy.W.D.Pa.1981)

*In re Barkley–Cupit Enter. Inc.,* 13 B.R. 86 (Bkrtcy.N.D.Ga.1981) *aff'd* 677 F.2d 112 (5th Cir.1982)
*In re Alyucan Interstate Corp.,* 12 B.R. 803, 812 n. 18 (Bkrtcy.D.Utah 1981)
*In re Pitre,* 11 B.R. 777 (Bkrtcy.N.D.Ill.1981)
*In re Born,* 10 B.R. 43 (Bkrtcy.S.D.Tex.1981)
*In re VanNort,* 9 B.R. 218 (Bkrtcy.E.D.Mich. 1981)
*Matter of Willis,* 6 B.R. 555, 559 (Bkrtcy.N.D.Ill. 1980)
*In re Adams,* 2 B.R. 313 (Bkrtcy.M.D.Fla.1980)
See also, Dean C. Gordanier, Jr., *The Indubitable Equivalent of Reclamation: Adequate Protection for Secured Creditors under the Bankruptcy Code,* 54 Am.Bankr.L.J. 299, 306 (1980)

2. *In re Ahlers,* 794 F.2d 388, 401 n. 14 (8th Cir.1986) *rev'd on other grounds, Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (real estate).

*In re Moreau,* 135 B.R. 209, 213 (N.D.N.Y.1992) (real estate)
*In re 222 Liberty Assoc.,* 105 B.R. 798, 801 (E.D.Pa.1989) (real estate)
*In re Jablonski,* 88 B.R. 652, 655 (E.D.Pa.1988) (real estate)
*In re Union Meeting Partners,* 178 B.R. 664, 674 n. 7 (Bkrtcy.E.D.Pa.1995) (real estate)
*In re Kennedy,* 177 B.R. 967 (Bkrtcy.S.D.Ala. 1995) (vehicle)
*In re Columbia Office Assoc., Ltd.,* 175 B.R. 199, 202 (Bkrtcy.D.Md.1994) (real estate)
*In re Arnette,* 156 B.R. 366, 368 (Bkrtcy.D.Conn. 1993) (vehicle)
*Matter of Savannah Gardens–Oaktree,* 146 B.R. 306, 308 (Bkrtcy.S.D.Ga.1992) (real estate)
*In re Johnson,* 145 B.R. 108, 112 (Bkrtcy.S.D.Ga. 1992) (vehicle)
*In re Robertson,* 135 B.R. 350, 352 (Bkrtcy. E.D.Ark.1992) (real estate)
*In re Landing Assoc., Ltd.,* 122 B.R. 288, 292 (Bkrtcy.W.D.Tex.1990) (real estate)
*In re Owens,* 120 B.R. 487, 492 (Bkrtcy.E.D.Ark. 1990) (vehicle)
*Matter of Seip,* 116 B.R. 709, 711 (Bkrtcy.D.Neb. 1990) (real estate and equipment)
*In re Orsa Assoc., Inc.,* 106 B.R. 418, 429 (Bkrtcy.E.D.Pa.1989) (real estate)
*Matter of Kain,* 86 B.R. 506, 515 (Bkrtcy.

be confined to these choices, various courts have chosen the effective date of a plan as the valuation date.[3] Some have even opted for the hearing date.[4] We have found a court that used, as a reference, the filing date of the plan,[5] and a court that chose the date that the proceeding to value was filed.[6] When a sale is involved, the sale date has been critical to another court.[7]

While I have no illusion that I have the capacity to reconcile such divergent opinions of my learned brothers and sisters on the bench, I nevertheless must pursue the course of adding my minuscule voice to the dissonance of views on the issue.

In no small part, this multiplicity of valuation dates is a product of the statutory language present in 11 U.S.C. § 506(a) which specifies that "[the] value [of the creditors interest in the estate's interest in property] shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

I begin my analysis with the statute[8]. For no particular reason, and recognizing that this starting point may affect the ultimate conclusion, I point out that in 11 U.S.C. § 502(a) the court allows claims "as of the date of the filing of the petition".

Some portion or all of that claim may be secured as instructed by 11 U.S.C. § 506(a).[9]

As referenced in Section 506(a) that "value" is a product of at least two variables, i.e. the purpose of the valuation, and the manner of disposition of the property tied inseparably to either the disposition, use or the plan, whichever affects the creditor's interest.

W.D.Mich.1988) (crops, livestock, equipment and real estate)
*In re Blakey,* 76 B.R. 465, 468 (Bkrtcy.E.D.Pa. 1987) (real estate)
*In re Minick,* 63 B.R. 440, 441 (Bkrtcy.D.C.1986) (real estate)
*In re Reynolds,* 17 B.R. 489, 493 (Bkrtcy.N.D.Ga. 1981) (vehicle)
*In re Fulcher,* 15 B.R. 446, 448 (Bkrtcy.D.Kan. 1981) (vehicle)
*In re Crockett,* 3 B.R. 365, 368 (Bkrtcy.N.D.Ill. 1980) (vehicle)

3. *In re Melgar Enterprises, Inc.,* 151 B.R. 34, 39 (Bkrtcy.E.D.N.Y.1993) (real estate).

*In re Broomall Printing Corp.,* 131 B.R. 32, 34 (Bkrtcy.D.Md.1991) (equipment)
*In re Cook,* 38 B.R. 870, 872 (Bkrtcy.D.Utah 1984) (vehicle)
*In re Frost,* 19 B.R. 804, 808 (Bkrtcy.D.Kan. 1982), *rev'd on other grounds,* 47 B.R. 961 (D.Kan.1985)
*In re Strong,* 12 B.R. 221, 223 (Bkrtcy.W.D.Tenn. 1981) (vehicle)
*Matter of Smith,* 4 B.R. 12 (Bkrtcy.E.D.N.Y.1980) (vehicle)
*In re Lum,* 1 B.R. 186 (Bkrtcy.E.D.Tenn.1979) (vehicle)
See also, 3 Collier on Bankruptcy, 15th Ed., ¶ 506.04 at p. 506–36

4. *In re Anderson,* 88 B.R. 877, 884 (Bkrtcy. N.D.Ind.1988).

*In re Wabash Valley Power Ass'n, Inc.,* 77 B.R. 991 (Bkrtcy.S.D.Ind.1987)
*In re Van Holt,* 28 B.R. 577 (Bkrtcy.W.D.Mo. 1983)
*In re Fulcher,* 15 B.R. 446 (Bkrtcy.D.Kan.1981)

*In re Klein,* 10 B.R. 657, 661 (Bkrtcy.E.D.N.Y. 1981) (vehicle)
*Matter of Pierce,* 5 B.R. 346, 347 (Bkrtcy.D.Neb. 1980)
See also, Norton Bankruptcy Law and Practice 2d § 43:2 at p. 43–10

5. *Matter of Willis,* 6 B.R. 555, 559 (Bkrtcy. N.D.Ill.1980).

6. *In re Jones,* 5 B.R. 736, 739 (Bkrtcy.E.D.Va. 1980)'(vehicle).

7. *In re Alpine Group, Inc.,* 151 B.R. 931 (9th BAP 1993).

8. "It is axiomatic that statutory interpretation properly begins with the language of the statute itself, including all of its parts." *Velis v. Kardanis,* 949 F.2d 78, 80 (3rd Cir.1991).

9. **§ 506. Determination of secured status.**

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The creditor's secured claim is thus dependent on the "value" of the creditor's interest which modulates throughout the life cycle of the bankruptcy and arguably on several simultaneous courses depending on the "purpose of the valuation".

Of course, a resolution of the relationship between § 502(b) and § 506(a) cannot end our discussion but would suggest that a claim is fixed as of the date of filing. *In re Craner,* 110 B.R. 111, 118 (Bkrtcy.N.D.N.Y.1988). While no portion of that claim, i.e. the secured claim, can exceed the total claim, this does not mean that the secured claim remains a constant.

> "It is clear from section 506(a) that although the total claim amount may be allowed at filing and the validity of the security interest declared, how much of a total claim is actually a secured claim at any point during a bankruptcy case may fluctuate." *In re Kennedy,* 177 B.R. 967 (Bkrtcy.S.D.Ala.1995).

This appears to be consistent with other provisions of § 506.

11 U.S.C. § 506(b) allows to the holder of a secured claim, interest and other fees on the claim should the collateral exceed the claim. Those allowances are not necessarily a part of the claim, but rather may supplement the claim. This is certainly consistent with the prohibition barring the inclusion of unmatured interest in the claim allowance process. 11 U.S.C. § 502(b)(2). Likewise, 11 U.S.C. § 506(c) and (d) are not inconsistent with the concept of a fluctuating secured claim.

We next query whether allowing a secured claim to fluctuate as a portion of a fixed total claim is at variance with other provisions of Chapter 5 such as § 552(b) which extends prepetition security interests to postpetition proceeds and rents. This section appears to add but another variable to the determination of what portion of the fixed claim is actually collateralized and thus secured on the date of valuation.

It should be indicated that at least two courts have concluded that they have no jurisdiction to conduct a valuation hearing absent an "expressed and valid purpose". *In re Barlock,* 121 B.R. 13, 13 (Bkrtcy.S.D.Tx. 1990); *In re Richardson,* 97 B.R. 161 (W.D.N.Y.1989).

11 U.S.C. § 506 provides rather vague but nevertheless supportable argument for the position that the court should take a flexible approach to the valuation of collateral in bankruptcy matters. While the statute does not precisely indicate when the time for valuation should occur, we can resort to legislative history to interpret congressional intent.[10]

> While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property. This determination shall be made in conjunction with any hearing on such disposition or use of property or on a plan affecting a creditor's interest. To illustrate, a valuation early in the case in a proceeding under sections 361–363 would not be binding upon the debtor or creditor at the time of confirmation of the plan. Sen.R. No. 989, 95th Cong., 2d Sess. 68 (1978), reprinted in U.S.Code Cong. & Admin.News 5787, 5854.

It has also been indicated that, "... determinations for purposes of adequate protection are not binding for purposes of 'cramdown' on confirmation in a case under Chapter 11." 124 Congressional Record H. 11095 (Sept. 28, 1978); § 17–411 (Oct. 6, 1978).

The bankruptcy courts generally have abided by this distinction when utilizing the date of valuation in adjudicating issues before them. Almost universally, the courts have chosen the date of filing as the appropriate time to value a secured creditor's interests for purposes of adequate protection under § 361 et seq.[11]

Conversely, the vast majority of courts have considered the date of confirmation

---

10. Courts "... may refer to a statute's legislative history to resolve statutory ambiguity." *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991).

11. *In re Timbers of Inwood Forest Assoc., Ltd.,* 793 F.2d 1380, 1386 n. 7 (5th Cir.1986) *In re George Ruggiere Chrysler–Plymouth, Inc.,* 727 F.2d 1017 n. 4 (11th Cir.1984) (automobile inventory).

and/or the effective date of the plan as the relevant date to value the secured claim of that creditor for purposes of plan implementation.[12]

The date of filing is typically used as the operative date for debtors trying to avoid liens under § 522(f)[13] while those utilizing the redemption sections of 722 rely on the filing date[14] or the actual hearing date[15].

Those courts holding that the date of valuation should be the file date of the petition

*In re Reddington/Sunarrow Ltd. Partnership*, 119 B.R. 809, 813 (Bkrtcy.D.N.Mex.1990)
*In re Marion Street Partnership*, 108 B.R. 218, 224 (Bkrtcy.D.Minn.1989)
*In re Smithfield Estates, Inc.*, 48 B.R. 910 (Bkrtcy.D.R.I.1985)
*In re Datair Systems Corp.*, 42 B.R. 241 (Bkrtcy. N.D.Ill.1984)
*In re Sun Valley Ranches, Inc.*, 38 B.R. 595 (Bkrtcy.D.Idaho 1984)
*In re Aegean Fare Inc.*, 34 B.R. 965, 968 (Bkrtcy. D.Mass.1983)
*Matter of Kennedy Mortgage Co.*, 23 B.R. 466 (Bkrtcy.D.N.J.1982)
*LaJolla Mortg. Fund v. Rancho El Cajon Assoc.*, 18 B.R. 283 (Bkrtcy.S.D.Cal.1982) (real estate) (adequate protection)
*In re Barkley–Cupit Enter. Inc.*, 13 B.R. 86 (Bkrtcy.N.D.Ga.1981) *aff'd* 677 F.2d 112 (5th Cir.1982)
*In re Alyucan Interstate Corp.*, 12 B.R. 803, 812 n. 18 (Bkrtcy.D.Utah 1981)
*In re Born*, 10 B.R. 43 (Bkrtcy.S.D.Tex.1981)
See also,
Dean C. Gordanier, Jr., *The Indubitable Equivalent of Reclamation: Adequate Protection for Secured Creditors under the Bankruptcy Code*, 54 Am.Bankr.L.J. 299, 306 (1980)

**12.** *In re Ahlers*, 794 F.2d 388, 401 n. 14 (8th Cir.1986) *rev'd on other grounds, Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988)
*In re Moreau*, 135 B.R. 209 (N.D.N.Y.1992)
*In re 222 Liberty Assoc.*, 105 B.R. 798, 801 (E.D.Pa.1989)
*In re Jablonski*, 88 B.R. 652, 655 (E.D.Pa.1988)
*In re Union Meeting Partners*, 178 B.R. 664, 674 n. 7 (Bkrtcy.E.D.Pa.1995)
*In re Columbia Office Assoc., Ltd.*, 175 B.R. 199, 202 (Bkrtcy.D.Md.1994)
*In re Arnette*, 156 B.R. 366 (Bkrtcy.D.Conn.1993)
*In re Melgar Enterprises, Inc.*, 151 B.R. 34, 39 (Bkrtcy.E.D.N.Y.1993)
*Matter of Savannah Gardens–Oaktree*, 146 B.R. 306 (Bkrtcy.S.D.Ga.1992)
*In re Johnson*, 145 B.R. 108 (Bkrtcy.S.D.Ga. 1992)
*In re Robertson*, 135 B.R. 350, 352 (Bkrtcy. E.D.Ark.1992)
*In re Landing Assoc. Ltd.*, 122 B.R. 288 (Bkrtcy. W.D.Tex.1990)

for purposes of confirmation are in a minority. That position is argued by the following cases: *In re Johnson*, 165 B.R. 524 (S.D.Ga. 1994) (vehicle); *In re Beard*, 108 B.R. 322 (Bkrtcy.N.D.Ala.1989) (vehicle); *In re Van-Nort*, 9 B.R. 218 (Bkrtcy.E.D.Mich.1981) (vehicle); *Matter of Willis*, 6 B.R. 555 (Bkrtcy. N.D.Ill.1980) (vehicle)[16]; and *In re Adams*, 2 B.R. 313 (Bkrtcy.M.D.Fla.1980) (vehicle).

The opinion stated in *In re Beard, supra,* coherently identify those reasons supporting

*In re Owens*, 120 B.R. 487 (Bkrtcy.E.D.Ark.1990)
*Matter of Seip*, 116 B.R. 709, 711 (Bkrtcy.D.Neb. 1990)
*In re Anderson*, 88 B.R. 877, 884 (Bkrtcy. N.D.Ind.1988)
*Matter of Kain*, 86 B.R. 506, 515 (Bkrtcy. W.D.Mich.1988)
*In re Blakey*, 76 B.R. 465, 468 (Bkrtcy.E.D.Pa. 1987)
*In re Minick*, 63 B.R. 440, 441 (Bkrtcy.D.C.1986)
*In re Cook*, 38 B.R. 870 (Bkrtcy.D.Utah 1984)
*In re Frost*, 19 B.R. 804, 808 (Bkrtcy.D.Kan. 1982), *rev'd on other grounds*, 47 B.R. 961 (D.Kan.1985)
*In re Fulcher*, 15 B.R. 446 (Bkrtcy.D.Kan.1981)
*In re Strong*, 12 B.R. 221, 223 (Bkrtcy.W.D.Tenn. 1981)
*In re Klein*, 10 B.R. 657 (Bkrtcy.E.D.N.Y.1981)
*In re Jones*, 5 B.R. 736 (Bkrtcy.E.D.Va.1980)
*Matter of Smith*, 4 B.R. 12 (Bkrtcy.E.D.N.Y.1980)
*In re Crockett*, 3 B.R. 365, 368 (Bkrtcy.N.D.Ill. 1980)
*In re Lum*, 1 B.R. 186 (Bkrtcy.E.D.Tenn.1979)
See also,
3 Collier on Bankruptcy, 15th Ed., ¶ 506.04 at p. 506–36

**13.** *In re Hall*, 1 F.3d 853 (9th Cir.1993)

*In re Chandler*, 77 B.R. 513 (Bkrtcy.E.D.Pa.1987)
*Matter of Grube*, 54 B.R. 655, 657 (Bkrtcy.D.N.J. 1985)
*In re Kalli*, 34 B.R. 191, 193 (Bkrtcy.D.Vt.1983)
*In re Rappaport*, 19 B.R. 971 (Bkrtcy.E.D.Pa. 1982)
*In re Pitre*, 11 B.R. 777 (Bkrtcy.N.D.Ill.1981)

**14.** *In re Kinser*, 17 B.R. 468 (Bkrtcy.N.D.Ga. 1981)

See also,
Norton Bankruptcy Law and Practice 2d § 43:2 at p. 43–9

**15.** *In re Van Holt*, 28 B.R. 577 (Bkrtcy.W.D.Mo. 1983)

*Matter of Pierce*, 5 B.R. 346, 347 (Bkrtcy.D.Neb. 1980)

**16.** *Willis* appears to ambiguously embrace both the petition filing date *and* the plan filing date. See page 559.

reliance on the date of filing for valuation purposes. First, to value a secured claim regarding depreciating property at any other time but file date would violate the fifth amendment prohibition against the taking of private property. Secondly, a secured claim has to be determined on the date of filing in order to conclude that it is "oversecured" for purposes of section 506(b), which set forth the conditions under which interest and contracted fees and costs are allowed. Third, the filing date of the bankruptcy is the ". . . date on which the estate was created and the creditor's rights became fixed" citing *In re Adams*, 2 B.R. 313, 314 (Bkrtcy.M.D.Fla. 1980).

The case of *Matter of Willis, supra,* adds an additional reason for choosing a specific date as being the need for uniformity in relying on one date for valuation with regard to all matters in a particular case. *Matter of Willis, supra* at p. 559.

Those reasons advanced for utilizing the date of confirmation (or effective date of plan) are set forth in *In re Kennedy, supra,* where reliance is placed on a plain reading of section 506(a) to suggest that the proportion of a secured claim to the unsecured claim varies during a case and, therefore, this valuation must necessarily take place after the file date. Moreover, the above noted fifth amendment problem is circumvented by the allowance of adequate protection payments upon creditor request. 11 U.S.C. § 362.

While it may be fundamentally sound to utilize one date for all valuation purposes so that creditors, debtors and other parties in interest would clearly be aware of their rights and duties relative to property of the estate, a conclusion such as this would fly directly in the face of the statutory pronouncements set forth in 11 U.S.C. § 506(a) and the legislative history that preceded that provision. What intrigues me about the multitude of opinions that have been written on section 506(a) is the willingness of the courts

to unqualifiedly accept any one date as necessarily *the* fixed point of valuation of a secured creditor's claim. If choosing the confirmation date for plan confirmation purposes is required, hasn't that court, in fact, removed the flexibility advised by section 506(a)? I can take judicial notice [17] that, generally speaking, vehicles depreciate and real estate appreciates. I suspect that the equities of a given case have motivated the courts to select either the petition file date or the plan confirmation date as the applicable and controlling date of valuation. For example, as indicated earlier, those courts that have utilized the filing date for confirmation purposes were valuing depreciating vehicles. They, nevertheless, have ostensibly locked themselves into using that same date in all superseding cases regardless of whether the secured property is appreciating or depreciating.

■ Our review of these numerous decisions has convinced us that the choice as to which date of valuation we should utilize in adjudicating an issue such as the one before us should not be restricted to any one date but should turn on the following factors.[18]

1. The impact of the debtor's efforts on the postpetition change in value.

2. The expectancies of the parties at the time they may have made the loan agreement (if any).

3. The desirability of uniformity. Will the application of different dates for valuation purposes reach an absurd result?

4. The convenience of administration.

5. The equitable concept that those who bear the risk should benefit from the rise in value.

6. A resulting windfall to any one party should be discouraged.[19]

7. The bankruptcy policy set forth in section 552(b) which extends prepetition liens

---

17. Federal Rule of Evidence 201

18. To a significant extent, these factors were drawn from the article, Patrick Fitzgerald, *Bankruptcy Code Section 506(a) and Undersecured Creditors: What Date for Valuation?* 34 UCLA L.Rev.1953 (1987).

19. A party should not receive a ". . . windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank of Detroit,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961).

to postpetition proceeds in certain situations.

8. The bankruptcy policy set forth in 11 U.S.C. § 362(d), which encourages the tendering of adequate protection payments to a creditor holding depreciating collateral.

9. The off-stated policy of bankruptcy to secure the debtor a "fresh start". *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).

10. The result of utilizing a specific date of valuation on the bankruptcy itself including that impact upon senior and junior lien creditors.

11. Whether the party benefitting from a delay in valuation has been responsible for that delay.

▪ Applying these factors to the specific case before us we conclude as follows: It was solely due to the Debtor's efforts that the valuation of the property increased by Twenty Thousand Dollars ($20,000.00) during the bankruptcy. That effort involved the re-zoning of this property from residential to commercial.

At the time the Plaintiff and the Defendant entered into their mortgage agreement, while general appreciation of the real estate could have been anticipated by the parties, there was no expectancy that the property would appreciate due to changes in zoning.

11 U.S.C. § 362(d) places the risk of depreciation of secured property on the Debtor thus generally suggesting that the Debtor is the one that should benefit from increases in value.

Since the collateral has not diminished in value during the bankruptcy, the creditor is not in the need of any adequate protection.

Rewarding the Debtor's postpetition efforts by allowing it to retain the Twenty Thousand Dollars ($20,000.00) of "new value" would certainly support the Debtor's "fresh start".

Since the plan provides for a zero distribution to unsecured creditors, the Debtor would necessarily receive a windfall of Twenty Thousand Dollars ($20,000.00) if this court were to choose the filing date as the applicable date of valuation.

11 U.S.C. § 552(b) extends a prepetition lien of a creditor to postpetition proceeds of that collateral as set forth in the agreement. That analogy strongly suggests that a creditor's lien should generally extend to appreciating collateral.

This case is basically a one-issue case with the plan to follow whatever decision is rendered by this court. Because the plan provides for zero distribution to unsecured creditors, it is not anticipated that using one date for valuation as opposed to another would result in any absurdities or inconveniences of administration.

LA Bank, a junior creditor, has filed what amounts to be a "consenting" answer, which indicates a willingness to be stripped down completely to unsecured status. Nevertheless, regardless of what date we chose for valuation, First Federal Savings & Loan of Rochester would still be undersecured to some degree. Therefore, the only impact that this decision has would be on the Plaintiff–Debtor and the Defendant, First Federal Savings & Loan of Rochester.

Lastly, the court is not aware that any delay in adjudication has benefitted either side.

In summary, this property has increased in value during the bankruptcy solely because of the Debtor's efforts and not due to any general appreciation of the property. This was an increase in value not anticipated by the parties at the time of the bargain. Allowing the Debtor to benefit from this increase certainly encourages the Debtor in her fresh start. The Bank can expect to receive the present value of their allowed secured claim as determined on the date of the filing over the life of the plan. There is no unfairness to this result. It is for these reasons that I conclude that, on these facts, the applicable date for valuing the allowed secured claim is the date of filing. Inasmuch as we hereby adopt a flexible approach to selecting the appropriate date of valuation, I reserve the right to choose a different valuation point in any future case based on those factors enunciated herein.

Attached is our Order.

## ORDER

For the reasons indicated, the allowed secured claim of First Federal Savings & Loan of Rochester is deemed to be One Hundred Seventy–Six Thousand One Hundred Dollars ($176,100.00) with the balance of its claim being deemed unsecured.

Moreover, the claim of LA Bank is declared to be totally unsecured.