**In re John WHALLEY, a/k/a John I. Whalley, Jr., Debtor.**

**John WHALLEY, a/k/a John I. Whalley, Jr., Plaintiff,**

**v.**

**The AMERICAN INSURANCE COMPANY, Defendant.**

**Bankruptcy No. 95–20528–BM. Adv. No. 95–2434–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 25, 1996.

James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, PA, for Plaintiff.

James A. Lewis, Plowman, Spiegal & Lewis, P.C., Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Chief Judge.

Debtor has brought the above adversary action pursuant to 11 U.S.C. § 506 seeking, among other things, a determination that the claim of defendant American Insurance Company (hereinafter "American") is unsecured in its entirety; that its judicial lien is void in its entirety; and that American may share in the net proceeds realized from the sale of real property subject to its lien only as an unsecured nonpriority creditor.

American insists that it is partially secured to the extent of the net sale proceeds and that it therefore is entitled to said proceeds as a secured creditor and does not have to share them pro rata with unsecured nonpriority creditors.

In accordance with the analysis set forth below, judgment will be entered in favor of debtor and against American. The relief debtor seeks shall be granted.

### —FACTS—

Debtor filed a voluntary chapter 11 petition on February 17, 1995. The summary of schedules attached to the petition indicates that debtor's assets had a total declared value of $1,771,436.50 and that his liabilities totaled $16,831,059.01.

Schedule A, Real Property, listed several parcels of real property in which debtor had an ownership interest. Included among the properties so listed was real property located in Stoneycreek Township, Somerset County, Pennsylvania (hereinafter "the subject property").

According to debtor's statement of financial affairs, on September 27, 1994, American had obtained a judgment in state court in the amount of $109,300.00 against debtor and others. Schedule D, Creditors Holding Secured Claims, identified American as having a disputed claim in the amount of $109,300.00 by virtue of its judicial lien.

As of the date on which the bankruptcy petition was filed, sixteen liens and encumbrances attached to the subject property in the following order of priority:

1) various municipal, county, and school district statutory liens in the amount of $942.21;

2) mortgage in favor of Donald McFarland, with a payoff due in the amount of $4,038.17;

3) statutory lien in favor of Commonwealth of Pennsylvania, Department of Revenue (hereinafter "PDR"), in the amount of $1,259.21;

4) statutory lien in favor of PDR in the amount of $7,637.60;

5) statutory lien in favor of Commonwealth of Pennsylvania, Department of Labor and Industry (hereinafter "PDLI") [1];

6) statutory lien in favor of United States of America, Internal Revenue Service (hereinafter "IRS"), in the amount of $37,536.27;

7) statutory lien in favor of PDR in the amount of $6,694.27;

8) statutory lien in favor of IRS in the amount of $31,297.74;

9) statutory lien in favor of PDR in the amount of $2,762.54;

10) statutory lien in favor of IRS in the amount of $348,541.39;

11) statutory lien in favor of IRS in the amount of $72,900.01;

12) statutory lien in favor of IRS in the amount of $359.02;

13) judicial lien in favor of Stephen Yantus, Jr. in the amount of $7,160.00;

14) judicial lien in favor of American in the amount of $109,300.00;

15) statutory lien in favor of IRS in the amount of $111,326.57; and

16) statutory lien in favor of PDR in the amount of $9,708.94.

Subsequent to the filing of the bankruptcy petition, PDR filed a proof of claim in the total amount of $89,314.79. Its secured claim

---

**1.** PDLI subsequently informed debtor that its lien was satisfied prior to February 17, 1995, and agreed that no amount was due and owing to it on the lien.

amounted to $35,582.63, while its unsecured priority claim amounted to $43,284.73.

On June 27, 1995, IRS filed a proof of claim in the total amount of $705,256.92. Its secured claim totaled $645,758.82, while its unsecured priority claim totaled $56,459.14.

American filed a proof of claim on July 6, 1995, wherein it asserted a secured claim in the amount of $644,739.27.

Subsequent to the filing of the above proofs of claim, debtor entered into extensive negotiations with IRS and PDR in an attempt to settle and compromise their claims.

IRS eventually compromised its claim for a lump sum payment of $640,848.84. It specifically agreed to waive the penalties included in its claim in return for a lump sum payment in the amount of $585,451.84 plus payment in full of debtor's unpaid income tax liability in the amount of $55,397.00 for tax year 1994. Payment of these amounts fully discharged and satisfied all pre-petition claims of IRS. As a result of this settlement, IRS' allowed claim against the bankruptcy estate was reduced by $64,408.08.

In addition, PDR eventually compromised its claim for a lump sum payment of $60,238.53. Accrued interest on unpaid taxes and penalties on the secured and unsecured priority portions of its claim were waived. As a result of the settlement, the amount of PDR's allowed claim was reduced by $29,076.26.

The net saving to debtor's bankruptcy estate as a result of these settlements approximated $93,000.00.

Because he lacked the wherewithal to pay the compromised claims of IRS and PDR, debtor also entered into an agreement with his mother, Ruth Whalley, whereby she agreed to lend the bankruptcy estate the sum of $700,000.00. On October 25, 1995, debtor filed a motion for approval of the loan agreement. In exchange for the loan, she was granted a superpriority lien in certain estate property pursuant to 11 U.S.C. § 364(d)(1) and an administrative lien in other property pursuant to 11 U.S.C. § 364(c).

Debtor submitted a proposed plan of reorganization on October 30, 1995. The proposed plan provided that Ruth Whalley would be paid in accordance with the terms and provisions of the loan agreement. It further provided that IRS and PDR would be paid in accordance with the above settlement agreements with them. As for American, the proposed plan provided that, to the extent it was secured, American would retain its lien and would be free to enforce it. To the extent that its claim was unsecured, American would be treated as a class 18 claimant, in which event it would receive no payment from the bankruptcy estate but would retain its right to pursue others who also were liable to American along with debtor.

Several significant events occurred on November 13, 1995. Debtor's motion to approve the loan agreement was granted. Debtor also commenced an adversary action (at Adversary No. 95–2432–BM) against Stephen Yantus, Jr. to determine the validity, priority, and extent of his lien against the subject property. Finally, debtor commenced the present adversary action (at Adversary No. 95–2434–BM) to determine the secured status of American's claim.

Should debtor prevail in this latter adversary action, estate funds that would be paid over to American if it is secured instead will be distributed to unsecured nonpriority creditors who are to receive payment from estate assets. Debtor does not contemplate reaping any benefit by keeping the funds in question for himself.

Debtor's proposed plan of reorganization was confirmed on April 1, 1996. No appeal of the confirmation order was taken.

Pursuant to a motion brought by debtor, the subject property was sold in this court to a third party for the sum of $26,700.00. No appeal was taken of the order confirming the sale. The settlement proceeds realized after various costs and expenses were deducted is $20,731.71. Among the items paid from the gross sale proceeds were the liens of the various municipal, county, and school taxing authorities ($942.72) and the balance due on the mortgage held by Donald McFarland ($4,038.17).

On August 22, 1996, judgment was entered, in favor of debtor and against Stephen Yantus, Jr. at Adversary No. 95–2432–BM. His proof of claim was entirely disallowed as a secured claim and instead was allowed as an unsecured nonpriority claim. No appeal of this order was taken.

As a result of the above transactions and events, all of the liens and encumbrances prior to American's judicial lien either were satisfied or stricken. As of August 22, 1996, American's judicial lien stood first in line with respect to the above net sale proceeds, provided that its retained its status as a secured creditor by virtue of its judicial lien.

It is undisputed that, but for the efforts of debtor in reaching post-petition settlement agreements with IRS and PDR and in reaching the post-petition loan agreement with Ruth Whalley, the liens superior to American's would have exhausted the net sale proceeds. Nothing would have remained for distribution to American in partial satisfaction of its judicial lien. Funds realized from the sale are available for distribution to creditors only because of the above agreements. American played no part in reaching the above agreements.

The present adversary action was submitted for decision on a case-stated basis. The parties jointly stipulated to the operative facts and submitted briefs in support of their respective positions.

## —DISCUSSION—

■ If the date on which the bankruptcy was filed and the case was commenced is the appropriate reference point for determining American's secured status and whether its judicial lien is void, American's judicial lien is completely unsecured and its judicial lien is avoided in its entirety.[2]

Section 506 of the Bankruptcy Code, 11 U.S.C. § 506, provides in pertinent part as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is unsecured to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

(b) To the extent that a claim secures a claim against the debtor that is not an allowed secured claim, such lien is void....

It is undisputed that, as of the commencement of the above bankruptcy case on February 17, 1995, American's claim was entirely unsecured. The value of American's interest in the subject property as of this date was zero. At least fourteen liens against the subject property were superior to American's lien as of February 17, 1995. The total amount of these senior liens far exceeded the value of the estate's interest in the subject property. After allowing for the amounts due on each of these liens, no value remained, as of the commencement of the bankruptcy case, to which American's lien could attach. More precisely, the estate's interest in the subject property would have been exhausted before the fifth most-senior lien was fully satisfied.

From this it follows that American's judicial lien was, as of the commencement of the bankruptcy case, completely unsecured pursuant to 11 U.S.C. § 506(a) and was void in its entirety pursuant to 11 U.S.C. § 506(d). Any equity in the subject property that accrued subsequent to the filing of the bankruptcy petition as a result of the above transactions and events inures to the benefit of unsecured nonpriority creditors and not to a junior lienholder whose claim otherwise is completely unsecured. To conclude otherwise would produce the anomalous result that a lien which became void by operation of law somehow was restored *à la* the fabled phoenix.

As we have noted, American takes issue not with the validity of this inference but with its soundness. It denies that the appropriate temporal reference point for determining its secured status is as of the filing of the bankruptcy petition. According to American, the appropriate reference point is the date on

---

2. American does not dispute this outcome *if* this is the appropriate time for determining its secured status. As we shall see, American insists that the appropriate reference point for making this determination is not as of the date when the bankruptcy petition was filed.

which the subject property was sold, which occurred after the prior liens of IRS and PDR were satisfied.

If American's secured status is determined as of the date on which the sale occurred, its claim is partially secured to the extent of its interest in the bankruptcy estate's interest in the subject property—$26,700.00. American's judicial lien is not void to this extent and it, rather than any unsecured nonpriority creditors, is entitled to the net sale proceeds of $20,731.71.

The issue we must decide in this instance is the appropriate temporal reference point as of which American's secured status should be determined for purposes of § 506. Neither the language of § 506 nor its legislative history offers guidance in resolving this issue. As far as we are able to determine, the United States Court of Appeals for the Third Circuit has not addressed this issue. There is no consensus among the courts that have done so. The majority view seems to be that the appropriate temporal reference point for determining secured status is the date on which the bankruptcy petition was filed and the case was commenced. Specific cases so holding are cited in *In re Wood* 190 B.R. 788, 790 n. 1 (Bankr.M.D.Pa.1996). A significant minority has held that the appropriate reference point is the date on which the plan of reorganization was filed. *See In re Wood,* 190 B.R. at 790 n. 2. Still other courts have selected other reference points. *In re Wood,* 190 B.R. at 791 nn. 3 and 4.

At least one court has held, without much analysis, that the appropriate temporal reference point for ascertaining secured status is the date on which the property subject to the contested lien was sold. *See In re Alpine Group, Inc.,* 151 B.R. 931, 935–36 (9th Cir. BAP1993). Its holding apparently was predicated on the determination that it would be inequitable for a debtor to reap the benefit of an increase in the value of the subject property subsequent to the filing of the bankruptcy petition.[3]

Given the particular circumstances presented in this case, we are convinced that the appropriate temporal reference point for determining American's secured status is the commencement of the bankruptcy case on February 17, 1995, and not the sale of the subject property on June 7, 1996.

If a forced sale of the subject property had occurred in a non-bankruptcy context, American would receive nothing in the way of distribution with respect to its judicial lien. As was previously noted, the net sale proceeds would be exhausted long before American's lien was reached. The proceeds would be applied to senior liens.

Determining American's secured status in a bankruptcy case as of the filing of the bankruptcy case would preserve this outcome. American would not be entitled to the net sale proceeds as partial satisfaction of its lien. If, however, we agree with American and instead determine its secured status as of the sale date, its position in this bankruptcy proceeding would be substantially better than in a non-bankruptcy context.

Section 506 of the Bankruptcy Code contemplates that a secured creditor will receive as a result of the bankruptcy case the same value as it would receive in a non-bankruptcy forced sale of debtor's non-exempt assets as of the petition date. *In re Tanner,* 14 B.R. 933, 937 (Bankr.W.D.Pa. 1981). This Code provision is designed to prevent a creditor with a secured interest in property with a value as of the commencement of the bankruptcy case that is less than the amount of its claim from reaping a benefit because of post-petition payments debtor makes to creditors having senior liens against the same property. *See In re Pitre,* 11 B.R. 777, 781 (Bankr.N.D.Ill.1981).

This conclusion applies with equal force where a creditor with a junior lien would enjoy a windfall as a result of efforts by debtor to compromise and pay off claims of senior lienholders and thereby create equity in the property which it intends to distribute to unsecured nonpriority creditors. To conclude otherwise would be inequitable in that American would reap a benefit which it took no part in creating and which would frustrate the bankruptcy objective of similarly situated creditors receiving the same treatment.

As the court in *In re Johnson,* 165 B.R. 524, 528 (S.D.Ga.1994), so aptly stated:

---

3. If this were the case—i.e., that debtor would reap the benefit of these factual occurrences

rather than his creditors—we might join in this determination.

The date the petition is filed and the bankruptcy case is commenced is the point where the secured creditor's rights are impacted by the bankruptcy and the tensions between adequate protection of such rights and a meaningful chance at rehabilitation ... for the debtor begins. The logical point as of which to ascertain property interests that must be adequately protected throughout an ensuing ... bankruptcy proceeding is the date of filing.

An order shall issue determining that American's claim is completely unsecured; that its judicial lien is void in its entirety; and that it may share, if at all, in the net sale proceeds only as an unsecured nonpriority creditor.